IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

GRAHAM L. STOWE,

      Plaintiff,                                         OPINION AND ORDER

     v.                                                      18-cv-321-wmc

GREGORY VAN RYBROEK,

      Defendant.
_____

      *Pro se* plaintiff Graham L. Stowe, a patient at Mendota Mental Health Institute, is proceeding in this civil action on a claim against defendant Gregory Van Rybroek for denying him access to a wheelchair accessible courtyard in violation of the Americans with Disabilities Act/Rehabilitation Act.  (Dkt. #9 at 1, 8.)  Before the court is defendant's motion for summary judgment.  (Dkt. #27.)  For the reasons that follow, the court will grant that motion.

UNDISPUTED FACTS[1]

      Plaintiff Graham Stowe was admitted to Mendota in 2009 after pleading not guilty by reason of mental disease or defect to several charges related to an incident involving his ex-girlfriend in which he threatened to commit suicide.  In July 2013, he escaped from a minimum-security unit, and after being apprehended, he was incarcerated for two years at Green Bay Correctional Institution before returning to Mendota under the terms of his

---

[1] Except as noted, the court draws the following undisputed facts from the parties' proposed findings of fact, responses, and replies, as well as supporting evidence.

1

previous plea. Since his escape, Mendota has considered him to be a high-risk patient who requires stronger security measures, which is a classification Stowe disputes. (Dkt. #37 at 4-5.)

Gregory Van Rybroek is a licensed psychologist and has worked as the Director of Mendota since August of 2000. In his role as director, Van Rybroek is responsible for implementing the institution's policies and directives, including those concerning safety and security.

In December of 2016, Stowe was diagnosed and treated at the University of Wisconsin Hospital for a herniated disk in his back. (Dkt. #30-1 at 1.) This caused him severe pain for which the hospital recommended rest and oxycodone for a period of two to four weeks. In January 2017, Stowe began physical therapy, and over the course of several months, he showed significant improvement in his ability to walk more often and for longer periods of time. In March 2017, however, Stowe began complaining of renewed pain in his back and the lower half of the right side of his body. By June, he was primarily using a wheelchair to move due to increased pain even though his doctors noted that there was no reason to believe his back pain would render him incapable of walking. Indeed, they recommended that Stowe continue to walk as part of his physical therapy regimen. Still, Stowe was provided with a wheelchair on an ongoing basis because he claimed walking caused him pain.

At Mendota, outdoor access is promoted as providing a "therapeutic benefit"; indeed, "[i]t is the goal that all patients shall have daily access to the outdoors <u>at least one hour each day</u>." (Dkt. #35-4.) Since October 2015, Stowe had been housed on the

Assessment Treatment Unit ("ATU"), a maximum-security wing with constant camera supervision, unlocked doors, and other modifications to reduce the risk of self-harm in patients. Because the ATU courtyard did not have a wheelchair ramp, Stowe had to use the stairs to gain access.

The parties dispute to what extent Stowe had difficulty standing or walking, but he asserts that by early August 2017, his back and sciatica pain had worsened to the point that he was *unable* to walk or access the courtyard. (Dkt. #35 at 10-11.) Even so, Stowe's progress notes from July 30 through August 12, 2017, indicate that he was observed ambulating at times. (Dkt. #30 at 5-6.) Regardless, on August 17, 2017, Stowe submitted a formal request to have his courtyard time in a wheelchair accessible courtyard. (Dkt. #31-1.) Six days later, Mendota employees began escorting Stowe to an accessible courtyard in the nearby TRAC-1 housing unit.

As Stowe acknowledges, his request for this accommodation initially had to go through several levels of managerial approval. (Dkt. #37 at 18.) In addition, defendant Rybroek attests that once approved, Mendota had to coordinate the movement to the area of the additional staff required to escort and supervise a high-risk patient like Stowe. (Dkt. #31 at 5.) Stowe purports to dispute that additional staff were ever "pulled" to escort him, based on his recollection that he was taken outside during "cross-shift," a time when "two [shifts] were already present on the unit" and "all the other patients were in their rooms." (Dkt. #37 at 14-15.) He also disputes that such security measures were necessary given the very different circumstances of his 2013 escape from a minimum-security unit and when he enjoyed better mobility. (Dkt. #37 at 4, 14, 17.) Moreover, each day that Stowe

3

was taken to the TRAC-1 courtyard, the additional security measures and coordination of extra staff to escort him between units reduced Stowe's actual average courtyard time from 60 to 50 minutes.

Stowe next filed a formal grievance on September 20, 2017, asserting that this reduction in recreation time constituted discrimination against him based on a disability. Specifically, he claimed that while other patients housed on his unit were getting between 60 and 150 minutes outside on a daily basis, he rarely enjoyed even 60 minutes. (Dkt. #35-5 at 1.) Stowe also claimed to have been denied *any* time outside for three weeks. (Dkt. #35-5 at 1.) On September 25, 2017, just five days after filing this grievance, Stowe overdosed on oxycodone that further examination revealed he had hidden in a hollowed-out highlighter in a hollow metal tube of his wheelchair. Stowe was prohibited from having a wheelchair in his room upon his return from the hospital as a result.

A client rights facilitator responded to Stowe's September 20 grievance on November 16, 2017, finding a "technical violation" of Stowe's rights "due to the excessive delay in accommodating [his] right to go to the courtyard," but also found that "relief has been granted in the form of [his] ability to go to the TRAC-1 courtyard." (Dkt. #31-2 at 3.) Without dispute, Van Rybroek attests that: (1) some patients may receive additional time outside if they participate in occupational therapy exercise groups; (2) this therapy is part of an individual patient's treatment plan; and (3) Stowe did not request to participate in that type of a therapy intervention. (Dkt. ##31 at 7, 37 at 25.) On December 19, 2017, Stowe was transferred to TRAC-1.

4

OPINION

A moving party is entitled to summary judgment if it can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party meets this burden, then the non-moving party must produce evidence that would permit a jury to reasonably find for the non-moving party in order to survive this motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). In considering a summary judgment motion, a court views disputed facts in a light most favorable to the non-moving party, but need not draw inferences only supported by speculation or conjecture in the non-moving party's favor. *Fischer v. Avanade, Inc.*, 519 F.3d 393, 401 (7th Cir. 2008).

Plaintiff alleges that both the six-day delay in accommodating his request for access to an accessible courtyard and subsequent denial of equal recreation time violated of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). Defendant moves for summary judgment on these claims, asserting that: (1) the record shows no credible evidence of a disability; (2) even if plaintiff had a disability, his requests for a wheelchair and an accessible courtyard were reasonably accommodated; and (3) Stowe cannot recover monetary damages because there is no evidence of intentional discrimination.

To prevail on a claim under the ADA, plaintiff must demonstrate that he was a qualified person with a disability who was denied access to a program because of his disability. *Hildreth v. Butler*, 960 F.3d 420, 430 (7th Cir. 2020). A claim under the RA has the same requirements *plus* the requirement that the relevant institution receive federal

5

funds. *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671-2 (7th Cir. 2012). The parties do not dispute that Mendota receives federal funds. Since the remaining elements of the claims under either Act are the *same*, plaintiff's ADA and the RA claims will be analyzed jointly. Although the court cannot determine on this disputed factual record whether plaintiff is disabled as a matter of law, defendant *is* entitled to summary judgment in his favor because plaintiff has failed to create a genuine dispute of material fact that he was denied access to courtyard recreation *because* of his disability or as a result of intentional discrimination.

## I. Plaintiff's Asserted Disability

As an initial matter, the parties dispute whether plaintiff's condition rendered him disabled within the meaning of the ADA and RA. A disability within the meaning of these statutes is a physical or mental impairment that substantially limits major activities, including walking, standing, and bending. 42 U.S.C. § 12102. A condition substantially limits a major life activity when the individual with the condition is "either unable to perform, or significantly restricted as to the condition, manner, or duration under which the individual can perform a major life activity as compared to an average person in the general population." *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 506 (7th Cir. 1998).

Specifically, the parties dispute the extent to which plaintiff actually needed a wheelchair, rather than walking or standing. Defendant acknowledges that plaintiff had a condition during this period causing him "some physical pain in his back." (Dkt. #31 at 7.) Moreover, plaintiff attests that when acute, his back pain amounted to a physical impairment that substantially limited major life activities, including in particular walking and standing. In support, plaintiff offers evidence of past medical diagnoses as documented

in his medical records, as well as his own subjective claims of pain and difficulty ambulating, even with pain medication. (Dkt. #35-3 at 42-104.) Plaintiff further notes that an MRI in 2019 showed that his degenerative disc disease had worsened. (Dkt. #35-3 at 110.) Still, defendant points out that plaintiff's doctors consistently *encouraged* him to walk, *and* he allegedly was seen walking at times by staff, arguing that both show he is not properly considered disabled.

Generally, a litigant must substantiate a claim with more than his own declarations to survive summary judgment. *Jones v. Merchants Nat. Bank & Trust Co.,* 42 F.3d 1054, 1057 (7th Cir. 1994). As noted above, there is some evidence that plaintiff could walk, at least some of the time, but there is medical evidence of a herniated disc and degenerative disc disease. There is also no dispute that plaintiff was treated for back pain and used a wheelchair to assist his mobility. Moreover, "there is no requirement that a [patient] provide 'objective' evidence of his pain and suffering—self-reporting is often the only indicator a doctor has of a patient's condition." *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005). That the nature of plaintiff's symptoms is to some degree subjective and difficult for medical professionals to document or explain does not establish as a matter of law that he was exaggerating his condition.[2]

At bottom, whether plaintiff was malingering or needed a wheelchair is a question for a jury on this record, not something this court can decide at summary judgment, since

---

[2] Defendant also suggests that plaintiff did not need his wheelchair, other than to store the oxycodone he later overdosed on, but even if relevant, that is more obviously no basis for summary judgment, since it may well indicate a potential substance abuse problem, rather than proof that plaintiff could or could not walk as the result of a lower back condition.

both credibility determinations and weighing of conflicting evidence are matters for trial. *Anderson*, 477 U.S. at 255. Indeed, viewing the evidence in a light most favorable to plaintiff, as the court must, a reasonable jury may find that plaintiff was disabled based on his own testimony on reported difficulty in walking, standing, and using stairs, and supporting medical records. Although defendant asserts that there is more evidence in support of his position, plaintiff's documented claims of subjectively experienced pain that interfered with his ability to walk creates a genuine dispute of material fact. For this reason, whether plaintiff has a qualifying disability cannot be determined as a matter of law at summary judgment.

## II. Equal Access to Outdoor Recreation

Regardless of whether plaintiff was disabled, however, the record shows he *was* given a reasonable accommodation, which allowed him access to a wheelchair-accessible courtyard. Nevertheless, plaintiff argues that genuine disputes of material fact preclude summary judgment as to equal access in three respects. First, and least persuasive, plaintiff suggests that the delay between his written request and its fulfillment was unreasonable. (Dkt. #32 at 4.) Second, plaintiff argues that his high-risk status is unwarranted, so Mendota should have housed him in the accessible TRAC-1 housing unit, cutting out the need to use stairs to go outside and the travel time to the TRAC-1 courtyard from the ATU and equalizing his outdoor time. (Dkt. #32 at 5-6.) Third, and finally, plaintiff argues that the reduced amount of courtyard time he did enjoy in comparison to other patients constitutes actionable discrimination under the ADA and RA all by itself. (Dkt. ##32 at 4, 35 at 12-13.)

First, plaintiff has not produced evidence to support his contention that a short delay between his written request and the implementation of a viable accommodation is unreasonable, particularly when there is no dispute that administrative approvals and personnel changes were needed before Mendota could proceed with the proposed accommodation. Again, an "*unreasonable* delay in providing an accommodation can provide evidence of discrimination" in the context of the ADA. *Jay v. Intermet Wagner*, 233 F.3d 1014, 1017 (7th Cir. 2000) (emphasis added). Whether a delay is unreasonable, however, "turns on the totality of the circumstances, including . . . good faith in attempting to accommodate the disability, the length of the delay, the reasons for the delay, [and] the nature, complexity, and burden of the accommodation request." *McCray v. Wilkie*, 966 F.3d 616, 621 (7th Cir. 2020).

The totality of the circumstances strongly favor defendant here. Even plaintiff acknowledges that the defendant had to initially send the accommodation request through several administrative approvals. (Dkt. #37 at 18.) While plaintiff purports to dispute that additional staff was necessary, he does so based only on his recollection of the number of available staff already on his unit when he goes outside during the afternoon "cross-shift." (Dkt. #37 at 18). Moreover, defendant offers credible details as to the steps required to arrange staffing schedules, as well as ensure the proper escort and supervision of a high-risk patient like plaintiff to TRAC-1 for courtyard time. Similarly, the "fact" that there *may* have been staff available on plaintiff's unit to take him outside does not speak to whatever internal staff scheduling and logistics were initially required to implement plaintiff's request, nor what preparations were required on the TRAC-1 unit, or to the fact

9

that specific staff may have been required to assist and supervise plaintiff in light of his security status. More to the point, although declarations are properly part of the submission at summary judgment, the attestation must still be evidence that *could be admissible* at trial. *Whitaker v. Wis. Dep't of Health Servs.*, 849 F.3d 681, 686 (7th Cir. 2017). Similarly, a witness at trial can only testify to matters about which he or she has personal knowledge. Fed. R. Evid. 602. Regardless, plaintiff is in no position to know how administrative approvals, staffing schedules and other logistics at Mendota actually work, beyond his own anecdotal observation. Without evidence to refute defendant's contention that the implementation delay was administratively necessary, plaintiff's argument fails on such a short delay.

Similarly, plaintiff has failed to show defendant acted unreasonably by initially moving him between the ATU and TRAC-1 for courtyard time, and keeping him housed in the ATU, rather than immediately housing him in TRAC-1. A disabled person is not entitled to receive the specific accommodation requested if that person receives some form of reasonable, alternative accommodation. *See Gile v. United Airlines*, 95 F.3d 492, 499 (7th Cir. 1996) (determining that the ADA did not require an employer to provide an employee with her requested transfer to a different department when it provided a reasonable alternative). Thus, just because Stowe would have *preferred* to have been housed in TRAC-1 sooner, access to the TRAC-1 courtyard still sufficed as a reasonable accommodation.[3]

---

[3] Plaintiff also challenges the validity of his high-risk status, but without more than plaintiff's personal disagreement with his security classification, the court will not scrutinize Mendota's decision to closely monitor a patient that had escaped in the past *and* recently overdosed. As such,

Finally, plaintiff claims that defendant's accommodation was unreasonable because it reduced his recreation time in comparison to the time afforded other, non-wheelchair bound patients. As for the additional recreation time other patients may have received, plaintiff does not dispute that this is an incentive provided to those who participate in certain therapeutic interventions, a policy plaintiff is not challenging in this lawsuit. More relevant is that under the ADA and RA, a reasonable accommodation is one that provides meaningful access to activities and programs for patients in a state facility. While the Second Circuit has interpreted the ADA to mean that an accommodation "must overcome structural impediments and non-trivial temporal delays that limit access to programs," *Wright v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 831 F.3d 64, 73 (2d Cir. 2016), Mendota's original and ultimate accommodations did just that.

As previously noted, the goal at Mendota is to provide each patient with an hour of daily outdoor recreation time. (Dkt. #35-4.) However, Mendota staff required ten minutes of preparation to staff and secure the TRAC-1 unit courtyard for the arrival of a high-risk patient. While plaintiff again disputes that any additional staff were necessary to take him outside, he has no personal knowledge of the protocols that Mendota needed to implement in order to provide him access to the TRAC-1 courtyard. Regardless, the short delay between implementing the original solution and then a permanent one was not a structural impediment that targeted plaintiff for his disability, but rather an administrative hurdle reasonably made necessary by plaintiff's *earned*, high-risk status. A

---

there is no evidentiary basis to conclude that declining to transfer plaintiff to TRAC-1 immediately, rather than escort him there daily from the ATU was unreasonable under a totality of the circumstances.

ten-minute delay caused by these administrative hurdles also is something less than a "non-trivial temporal delay." In light of legitimate security concerns and staffing requirements that plaintiff has not disputed with admissible evidence, a ten-minute reduction in plaintiff's courtyard time does not render an otherwise reasonable accommodation insufficient to provide him with meaningful access to courtyard time, especially since the institution eventually adopted the exact solution that plaintiff advocated by moving him to a TRAC-1 unit, effectively mooting any need for injunctive relief here.

### III. Evidence of Intentional Discrimination

Finally, plaintiff has not produced evidence demonstrating that he suffered *intentional* discrimination based on his disability, which plaintiff must do to recover compensatory damages under the ADA or the RA. *Strominger v. Brock*, 592 F. App'x 508, 511 (7th Cir. 2014). Again, at the summary judgment stage, the movant has the burden of showing that there is no genuine issue of material fact. *Anderson*, 477 U.S. at 256. However, where there is a properly supported motion for summary judgment, the non-moving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id*.

Plaintiff claims that Mendota's refusal to transfer him immediately from the ATU unit to the TRAC-1 unit constitutes discrimination, but he has failed to refute defendant's valid, non-discriminatory reasons for keeping him housed in the ATU until December of 2017. Specifically, defendant attests that plaintiff remained in the ATU because he was disruptive, and it was less of an administrative burden to keep him there and assign extra staff for his trips to the TRAC-1 courtyard, rather than house plaintiff in the TRAC-1 unit

all the time. (Dkt. #31 at 6.) Plaintiff disputes that he was disruptive in the ATU, but he concedes (as he must) that he previously threatened suicide and had escaped Mendota in the past. (Dkt #35 at 1, 3.) While plaintiff again opines that his past behavior does not warrant his high-risk status, the court need not assess whether plaintiff's high-risk status is appropriate or how much of a burden transferring plaintiff sooner would have been as long as evidence supports those conclusions. Rather, at the summary judgment stage, once a defendant provides evidence that an action was taken for non-discriminatory reasons, as defendant here has done, the onus is on the *plaintiff* to refute that evidence with his own. Plaintiff has wholly failed to do so and instead offers his own opinion as to what should have occurred and when. Not only will the court not second-guess defendant's good faith basis for believing otherwise, nor it is confident would any reasonable jury, precluding a finding that defendant intentionally discriminated against plaintiff.

Accordingly, defendant is entitled to an award of summary judgment in his favor.

ORDER

IT IS ORDERED that defendant Gregory Van Rybroek's motion for summary judgment (dkt. #27) is GRANTED. The clerk's office is directed to enter judgment in defendant's favor and close this case.

Entered this 21st day of October, 2021

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge